JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| TIFFANY RODRIGUEZ, | ) Case No. ED CV 19-0469 FMO (SPx) |
|---|---|
| Plaintiff, | ) |
| v. | ) **ORDER Re: MOTION TO REMAND** |
| CIRCLE K STORES INC., | ) |
| Defendant. | ) |

Having reviewed and considered all the briefing filed with respect to Plaintiff's Motion to Remand Action to State Court (Dkt. 14, "Motion"), the court concludes that oral argument is not necessary to resolve the Motion. See Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

**BACKGROUND**

On February 11, 2019, plaintiff Tiffany Rodriguez ("plaintiff") filed a complaint in the Riverside County Superior Court against defendant Circle K Stores Inc. ("defendant"). (See Dkt. 1-2, Complaint at ECF 32). Plaintiff brought suit on behalf of herself and "all individuals who are or previously were employed by defendant in California and classified as non-exempt employees" for a period spanning four years prior to the complaint's filing date. (See id. at ¶ 20) (capitalization omitted). Plaintiff asserts six causes of action for: (1) unlawful business practices, in violation of Cal. Bus. & Prof. Code §§ 17200, et seq.; (2) failure to pay overtime compensation, in violation

of Cal. Lab. Code §§ 204, 510, 1194 & 1198; (3) failure to provide meal period premium pay, in violation of Cal. Lab. Code §§ 226.7 & 512; (4) failure to provide rest breaks, in violation of Cal. Lab. Code §§ 226.7 & 512; (5) failure to provide accurate itemized wage statements, in violation of Cal. Lab. Code § 226; and (6) failure to pay wages when due, in violation of Cal. Lab. Code §§ 201-03. (See id. at ¶¶ 41-91).

On March 14, 2019, defendant removed the action to this court, invoking the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332, et seq. (See Dkt. 1, Notice of Removal ("NOR") at 1).

## LEGAL STANDARD

Removal of a civil action from the state court where it was filed is proper if the action might have originally been brought in federal court. See 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court[.]"). "CAFA provides expanded original diversity jurisdiction for class actions meeting the amount in controversy and minimal diversity and numerosity requirements set forth in 28 U.S.C. § 1332(d)(2)." United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co., 602 F.3d 1087, 1090-91 (9th Cir. 2010); see Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1195 (9th Cir. 2015) ("A CAFA-covered class action may be removed to federal court, subject to more liberalized jurisdictional requirements[.]"). Under CAFA, "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2).

"[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S.Ct. 547, 554 (2014). However, "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 685 (9th Cir. 2006) (per curiam) (noting that Congress passed CAFA in the context of a "longstanding, near-canonical rule that the burden on removal

rests with the removing defendant"). "A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." Rodriguez v. AT&T Mobility Servs. LLC, 728 F.3d 975, 981 (9th Cir. 2013). "When plaintiffs favor state court and have prepared a complaint that does not assert the amount in controversy, or that affirmatively states that the amount in controversy does not exceed $5 million, if a defendant wants to pursue a federal forum under CAFA, that defendant in a jurisdictional dispute has the burden to put forward evidence showing that the amount in controversy exceeds $5 million, to satisfy other requirements of CAFA, and to persuade the court that the estimate of damages in controversy is a reasonable one." Ibarra, 775 F.3d at 1197. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Id. (internal quotation marks omitted). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198.

Title 28 U.S.C. § 1446(b)(1) requires a defendant to file a notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." However, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). The removal of class actions is also governed by 28 U.S.C. § 1446. See 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446."). "A case becomes 'removable' for purposes of section 1446 when the CAFA ground for removal is disclosed." Jordan v. Nationstar Mortg. LLC,, 781 F.3d 1178, 1184 (9th Cir. 2015).

**DISCUSSION**

I.   AMOUNT IN CONTROVERSY.

Plaintiff argues that defendant has failed to show, by a preponderance of the evidence, that

more than $5 million is at stake in this litigation. (See Dkt. 14-1, Plaintiff's Memorandum[] ("Pl Mem.") at 2). For the reasons set forth below, the court agrees.

A. <u>Timely Payment of Wages</u>.

In attempting to meet its burden of showing that more than $5 million is at issue, defendant first focuses on plaintiff's claim that defendant failed to make a timely payment of wages owed to terminated employees. (See Dkt. 1, NOR at ¶¶ 29-38). Under California Labor Code § 203(a), "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." In other words, "an employer that willfully fails to pay wages due an employee who is discharged or quits is obligated to pay the employee, in addition to the unpaid wages, an amount equal to the employee's daily wages for each day, not exceeding 30 days[.]" <u>Esparza v. KS Industries, L.P.</u>, 13 Cal.App.5th 1228, 1242 (2017).

Defendant contends that, over the course of the class period, 3,536 non-exempt employees in California saw their employment come to an end. (See Dkt. 1, NOR at ¶ 33). These employees had an average wage of $10.80 per hour, and worked an average of 7.5 hours per day. (See id. at ¶¶ 33-34). Thus, according to defendant, the purported failure to timely pay wages owed to outgoing employees exposed it to damages of 10.8 (average hourly rate) x 7.5 (average hours worked per day) x 3,536 (number of outgoing employees) x 30, or $8,592,480. (See id. at ¶ 35).

But there is a serious problem with defendant's damages estimate. Namely, defendant assumes a violation rate of 100%. That is, defendant assumes that it will be found liable for failing to pay wages to each and every one of the 3,536 non-exempt employees who left their jobs over the relevant time period. (See Dkt. 1, NOR at ¶¶ 33-36).

"[C]ourts disavow the use of a 100% violation rate when calculating the amount in controversy absent evidentiary support." <u>Moreno v. Ignite Rest. Grp.</u>, 2014 WL 1154063, *5 (N.D. Cal. 2014); see, e.g., <u>Amirian v. Umpqua Bank</u>, 2018 WL 3655666, *3 (C.D. Cal. 2018) ("In

4

addition, courts disavow the use of a 100% violation rate when calculating the amount in controversy absent evidentiary support.") (internal quotation marks omitted); <u>Hulse v. Bethesda Lutheran Communities, Inc.</u>, 2018 WL 1033223, *3 n. 6 (C.D. Cal. 2018) (same principle); <u>Letuligasenoa v. Int'l Paper Co.</u>, 2014 WL 2115246, *5 (N.D. Cal. 2014) (rejecting application of 100 percent violation rate where unsupported by the record, stating that it would "improperly shift the burden to plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction") (internal quotation marks omitted); <u>Marshall v. G2 Secure Staff, LLC</u>, 2014 WL 3506608, *2 (C.D. Cal. 2014) ("[P]arties may not rely on the assumption that the 100-percent violation rule applies without supporting the assumption with evidence.") (emphasis omitted). And here, defendant comes forward with no evidence to support its claimed violation rate. (<u>See</u>, <u>generally</u>, Dkt. 1, NOR; Dkt. 15, Defendant['s] Opposition to [] Motion to Remand ("Opp.")); <u>see also</u> <u>Ibarra</u>, 775 F.3d at 1199 n. 3 (noting that defendant "shifted to a 100% violation rate calculation, i.e., assuming that violations occurred in every identified shift for each class member, without giving any evidentiary explanation").

      B.    <u>Meal and Rest Break Claims</u>.

Plaintiff alleges that class members "were from time to time unable to take off duty meal breaks and were not fully relieved of duty for meal periods," that they "were required to perform work as ordered by defendant for more than five[] hours" without receiving a meal break, and that defendant failed to furnish second meal breaks "from time to time" for employees who worked ten or more hours in a shift. (<u>See</u> Dkt. 1-2, Complaint at ¶ 12). As such, employees "forfeited meal breaks without the correct meal premium compensation[.]" (<u>Id.</u>). In addition, employees "were denied their first rest periods . . . for some shifts worked of at least two[] to four[] hours," and "some shifts" of more than four hours lacked a second or third rest break as required by California law. (<u>Id.</u> at ¶ 13). Plaintiff seeks damages in the form of one hour of pay per employee for each workday in which non-compliant meal and rest breaks occurred. (<u>See</u> <u>id.</u> at ¶¶ 49-50).

Defendant estimates that there were 324,084 work weeks during the class period. (<u>See</u> Dkt. 1, NOR at ¶ 49). With an average hourly wage of $10.92, (<u>see</u> <u>id.</u> at ¶ 50), defendant assumes a rest break violation rate of one per work week, and calculates damages of $3,538,997.

(See id. at ¶ 51). Applying the same math to plaintiff's meal break claims, defendant calculates a separate damages amount of $3,538,997. (See id. at ¶ 70).

The court agrees with plaintiff that the fundamental assumption underlying defendant's meal and rest break damages calculation, i.e., that there was one violation per work week, (see Dkt. 14-1, Pl Mem. at 7-8), is unwarranted. Indeed, defendant seems to have pulled this assumption out of thin air. (See, generally, NOR). In Munoz v. Central Parking Sys., Inc., 2010 WL 3432239, *2 (C.D. Cal. 2010), the court noted that a series of damages-related assumptions, including one that plaintiffs "missed one meal period per week" were "unsupported[.]" Id. The court reached this conclusion because the defendant "fail[ed] to provide any evidentiary support[,]" and also because the defendant's "calculations . . . were made using the average hourly wage for all employees, when the real amount in controversy could be much lower depending on which employees were experiencing violations and their actual hourly wage." Id. Likewise, in Armstrong v. Ruan Transport Corp., 2016 WL 6267931, *3 (C.D. Cal. 2016), the court granted a motion to remand, in part because the defendant "did not present any facts supporting its assumption that one meal and rest period violation per workweek per class member is appropriate[.]" Id. (internal quotation marks omitted). And in Garibay v. Archstone Communities LLC, 539 F.Appx. 763, 764 (9th Cir. 2013), the Ninth Circuit refused to entertain an assumption of two missed rest breaks per month where the employer "failed to provide any evidence regarding why the assumption that each employee missed two rest periods per week was more appropriate than" alternative assumptions. Id.

Here, defendant's assumption of one violation per work week is even more attenuated given the Complaint's equivocal language regarding the frequency of meal and rest break violations. (See, e.g., Dkt. 1-2, Complaint at ¶ 12 (employees were deprived of meal breaks "from time to time"); id. at ¶ 13 (employees did not receive rest breaks to which they were entitled for "some shifts")); see Rivers v. Veolia Transportation Services, Inc., 2014 WL 3945789, *5 (N.D. Cal. 2014) ("The most that can be understood from Plaintiff's complaint is that 'from time to time,' Plaintiff 'regularly' worked in excess of 8 hours in a work day and 40 hours in a work week. That, however, does not support Defendant's assumption that every shift was of the same maximal

character.") (emphasis omitted).

Defendant argues that its one violation per week assumption is "conservative" given the allegations in the Complaint. (Dkt. 15, Opp. at 10). Nevertheless, "mere speculation and conjecture" is not enough to establish removal jurisdiction. See Ibarra, 775 F.3d at 1197; Blevins v. Republic Refrigeration, Inc., 2015 WL 12516693, *7 (C.D. Cal. 2015) (a removing CAFA defendant must "do more than pull an assumed rate of violation from the ether of generalized allegations of illegal behavior"); Smith v. Brinker Int'l, Inc., 2010 WL 1838726, *3 (N.D. Cal. 2010) ("Defendants provide no sufficient basis to apply its assumption of 2.5 overtime hours each day towards calculating the amount in controversy. The court may not base its jurisdiction on speculation and conjecture."). In short, the court will not give weight to defendant's damages estimate regarding the meal and rest break claims, because it rests upon an assumption devoid of any evidentiary support.

C. Wage Statements.

California law requires employers to "furnish . . . accurate itemized [wage] statement[s] in writing showing" various pieces of information. Cal. Lab. Code § 226(a). An employee "suffering injury as a result of a knowing and intentional failure by an employer to comply with" this legal requirement "is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)[.]" Id. at § 226(e)(1). Plaintiff alleges that defendant's failure to properly calculate overtime wages, combined with "missed meal and rest breaks," resulted in a failure to comply with California Labor Code § 226. (See Dkt. 1-2, Complaint at ¶ 82).

Defendant asserts that it issued approximately 30,669 wage statements to putative class members between February 11, 2018, and October 15, 2018.[1] (See Dkt. 1, NOR at ¶ 75). Applying the penalty of $50 for initial inaccurate wage statements and $100 for subsequent

---

[1] Defendant does not explain why it chose this February 11, 2018, to October 15, 2018, time frame, but avers that it encompasses "only . . . a portion of the applicable statute of limitations[.]" (Dkt. 1, NOR at ¶ 76).

7

inaccurate wage statements, defendant estimates potential damages of "at least $2,923,900." (Id.). Again, defendant's calculation is problematic. As with the timely-payment claim, see supra at § 1.A, defendant assumes, without any evidentiary support, a 100% violation rate. (See, generally, Dkt. 1, NOR). And defendant's claimed violation rate once again is not supported by the allegations in the Complaint, which simply alleges that defendant supplied deficient wage statements "from time to time" rather than as a matter of course. (See Dkt. 1-2, Complaint at ¶ 82). Finally, defendant fails to show its work with respect to the claimed damages amount. In other words, defendant does not supply the math it utilized to derive the $2,923,900 figure from the 30,669 wage statements it supposedly issued during the time frame at issue. (See, generally, Dkt. 1, NOR; Dkt. 15, Opp.).

D.  Overtime.

In its opposition brief, defendant raises a new ground for removal, claiming that $5,257,980 of damages are at issue with respect to plaintiff's overtime claim. (See Dkt. 15, Opp. at 11). However, defendant did not raise this ground in its NOR. (See, generally, Dkt. 1, NOR; see id. at ¶ 80 (a table summarizing the NOR's damage estimations, which does not include the $5,257,980 or invoke plaintiff's overtime claims)). Defendant furnishes no authority suggesting that it can invoke, in a brief, damages not raised in the NOR. (See, generally, Dkt. 14, Opp.); see also Frederick v. Hartford Underwriters Ins. Co., 683 F.3d 1242, 1245 (10th Cir. 2012) ("In analyzing the propriety of removal, we have held that the burden is on the party requesting removal to set forth, in the notice of removal itself, the underlying facts supporting the assertion that the amount in controversy exceeds the jurisdictional minimum.") (internal quotation marks and alterations omitted); Lowery v. Alabama Power Co., 483 F.3d 1184, 1216-17 (11th Cir. 2007) (noting that the notice of removal is the document which sets forth "the factual bases for federal jurisdiction").

Defendant suggests that its overtime damages estimate could be treated as an "amendment[] to the removal notice." (Dkt. 15, Opp. at 2 n. 2). "A defendant seeking to remove a case to federal court must do so within thirty days of being served with the complaint." ARCO Environmental Remediation, L.L.C. v. Dep't of Health & Environmental Quality of Montana, 213

F.3d 1108, 1117 (9th Cir. 2000). A "defendant may amend the Notice of Removal after the thirty day window has closed to correct a defective allegation of jurisdiction." Id. (internal quotation marks omitted). However, the NOR "cannot be amended to add a separate basis for removal jurisdiction after the thirty day period." Id. (quoting O'Halloran v. Univ. of Wash., 856 F.2d 1375, 1381 (9th Cir. 1988)); see Carr v. Nat'l Ass'n of Forensic Counselors, Inc., 2014 WL 7384718, *4 (C.D. Cal. 2014) ("Therefore, the Second Notice of Removal was untimely because it was filed more than 30 days after the Entity Defendants were served with the Complaint, and the Entity Defendants did not seek leave of the Court to file the Second Notice of Removal."); Prado v. Dart Container Corp. of Cal., 373 F.Supp.3d 1281, 1288 (N.D. Cal. 2019) (refusing to permit amendment of notice of removal after 30-day time period had elapsed where defendant "seeks to amend its notice of removal to rely on an entirely different timeliness ground not stated in the original notice of removal"). Accordingly, because defendant "raises a new argument [for removal] in its opposition to the Motion to Remand," and inappropriately suggests that the court should allow it to amend the NOR "to add new bases for removal after the thirty day removal period has run," the court declines to consider the overtime damages estimate defendant proffers. See Rader v. Sun Life Assurance Co. of Canada, 941 F.Supp.2d 1191, 1196 (N.D. Cal. 2013).

E.  Attorney's Fees.

Finally, the NOR notes that plaintiff seeks attorney's fees. (See Dkt. 1, NOR at ¶ 77; Dkt. 1-2, Complaint at Prayer for Relief). Defendant estimates an attorney's fees rate of 25% is reasonable and, in light of defendant's previous amount-in-controversy estimate of $18,594,374, calculates attorney's fees of $4,648,593. (See Dkt. 1, NOR at ¶ 80). However, the court agrees with plaintiff that this calculation is inherently flawed because it rests upon defendant's other, inadequately supported damages calculations. (See Dkt. 14-1, Pl Mem. at 9). In other words, since defendant did not meet its burden to establish the amount in controversy with respect to any of plaintiff's claims by a preponderance of the evidence, it follows that the court cannot rely on plaintiff's request for attorney's fees, especially where defendant bases its claim on a percentage of the alleged total amount in controversy. See Fritsch v. Swift Transportation Co. of Ariz., LLC, 899 F.3d 785, 795 (9th Cir. 2018) ("A district court may reject the defendant's attempts to include

future attorneys' fees in the amount in controversy if the defendant fails to satisfy this [preponderance of the evidence] burden of proof.").

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion to Remand Action to State Court **(Document No. 14)** is **granted**.

2. The above-captioned action shall be **remanded** to the Superior Court of the State of California for the County of Riverside, 4050 Main Street, Riverside, CA 92501, for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c).

3. The Clerk shall send a certified copy of this Order to the state court.

Dated this 11th day of July, 2019.

/s/
Fernando M. Olguin
United States District Judge